IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ona Carotenuto and William Struck, | Civil Action No. |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiffs, | Judge |
| v. | |
| VP Group LLC and Vahe Parsadanyan, | Jury Trial Requested |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Ona Carotenuto and William Struck, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants VP Group LLC and Vahe Parsadanyan (collectively "Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wage and overtime wages as required by the Fair Labor Standards Act ("FLSA") and for impermissible deductions in violation of the South Carolina Payment of Wages Act ("SCPWA").

2.    Defendants own and operate King Crab Calabash Seafood Buffet located at 5301 S. Kings Highway, Myrtle Beach, South Carolina 29575.

3.    Upon information and belief, Defendants also operate or have operated other restaurants in the Myrtle Beach area, including Angus Steak and Seafood, National House of Pancakes, and others.

4.    Plaintiffs and the similarly situated employees they seek to represent are or were tipped employees or other employees paid minimum wage minus a tip credit at King Crab ("tipped employees").

5.    Defendants have repeatedly violated the FLSA by improperly applying a tip credit to tipped employees' wages.

6.    Defendants require tipped employees to give a percentage of their sales each night to the "house," *i.e.*, to the restaurant itself, out of their tips.

7.    Defendants have not properly informed tipped employees of the tip credit provisions of the FLSA.

8.    Defendants required tipped employees to complete work off the clock without any hourly compensation.

9.    Defendants required tipped employees to complete non-tipped sidework for more than 20% of their time at work.

10.    Defendants took unlawful "kickbacks" from tipped employees' wages by requiring them to pay for work uniforms and customer walkouts.

11.    Defendants maintain a policy and practice of underpaying their tipped employees in violation of the FLSA.

2

12.     All tipped employees at the King Crab, including Plaintiffs, are subject to the same or similar employment policies and practices, including policies and practices with respect to wages paid and tips.

13.     Plaintiffs brings this action on behalf of themselves and similarly situated current and former tipped employees at King Crab who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendants.

14.     Plaintiffs brings this action on behalf of themselves and similarly situated current and former tipped employees at King Crab in South Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the SCPWA, S.C. Code Ann. § 40-10-30(A).

## I.  Jurisdiction and Venue

15.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

16.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' South Carolina law claims.

17.     Venue in this Court is proper under 28 U.S.C. § 1391(b).

## II.  Parties

**Plaintiffs**

**Ona Carotenuto**

18.     Plaintiff Ona Carotenuto is an individual residing in Horry County, South Carolina.

19.     Ms. Carotenuto has given written consent to join this action.

3

20.    At all relevant times, Ms. Carotenuto was an "employee" of Defendants within the meaning of the FLSA and the SCPWA.

**William Struck**

21.    Plaintiff William Struck is an individual residing in Horry County, South Carolina.

22.    Mr. Struck has given written consent to join this action.

23.    At all relevant times, Mr. Struck was an "employee" of Defendants within the meaning of the FLSA and the SCPWA.

**Defendants**

**VP Group LLC**

24.    Defendant VP Group LLC is a domestic limited liability company organized and existing under the laws of the state of South Carolina.

25.    Vahe Parsadanyan is an owner of VP Group LLC.

26.    VP Group LLC is an "employer" of Plaintiffs and similarly situated tipped employees as that term is defined by the FLSA and SCPWA.

27.    VP Group LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all tipped employees, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and tips.

28.    VP Group LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, tip-outs, sidework, expense reimbursements, and other practices.

29.    VP Group LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

4

30.    VP Group LLC's gross revenue exceeds $500,000 per year.

**Vahe Parsadanyan**

31.    Defendant Vahe Parsadanyan is an owner of VP Group LLC.

32.    Upon information and belief, Vahe Parsadanyan lives in South Carolina.

33.    Vahe Parsadanyan has control over VP Group LLC and its employees.

34.    At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has been an "employer" of Plaintiffs and similarly situated tipped employees as that term is defined by the FLSA.

35.    At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has been actively involved in managing the operations of the The King Crab.

36.    At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had control over Defendants' pay policies.

37.    At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had power over personnel and payroll decisions at the King Crab.

38.    At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

39.    At all times relevant, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had the power to transfer the assets and liabilities of the King Crab.

40.    At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had the power to declare bankruptcy on behalf of the King Crab.

41.     At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had the power to enter into contracts on behalf of the King Crab.

42.     At all relevant times, by virtue of his role as owner of VP Group LLC, Vahe Parsadanyan has had the power to close, shut down, and/or sell the King Crab.

43.     The King Crab functions for Vahe Parsadanyan's profit.

44.     Vahe Parsadanyan has influence over how the King Crab can run more profitably and efficiently.

III.    Facts

## CLASSWIDE FACTUAL ALLEGATIONS

45.     During all relevant times, Defendants have operated the King Crab in Myrtle Beach, South Carolina.

46.     Plaintiffs and the similarly situated persons they seek to represent are current and former tipped employees employed by Defendants at the King Crab.

47.     All tipped employees employed by Defendants over the last three years had essentially the same job duties – to serve food and drinks to customers.

48.     At all relevant times, Defendants paid tipped employees below minimum wage, *i.e.*, they attempted to claim a "tip credit" against their minimum wage obligation.

49.     Defendants purported to pay tipped employees at $2.13 per hour.

50.     However, Defendants failed to satisfy all of the requirements in taking a tip credit from tipped employees' wages.  Specifically, Defendants required tipped employees to share tips with the "house," or the restaurant itself.

51.     Tipped employees have complained to Defendants about the house tip-out, but

the policy was not changed.

52.     Defendants failed to properly inform tipped employees that they would be taking a tip credit from their wages, and of the FLSA requirements for doing so.

53.     Defendants required tipped employees to pay 2% of their total tips directly to the restaurant.

54.     At the end of each night, the tipped employees were required to give 2% of their sales, including taxes, to the restaurant manager, who explained that the money was given to the owner.

55.     Defendants kept the tips they received from their tipped employees.

56.     Defendants required tipped employees to work off the clock.

57.     Tipped employees regularly worked up to 60 or 70 hours per week, but were not paid overtime.

58.     Upon information and belief, Defendants reduced the hours worked on tipped employees' time records before processing payroll.

59.     Defendants required tipped employees to complete non-tipped side work at the beginning and end of their shifts.

60.     At the beginning of their shift, for approximately an hour before the restaurant opened to customers, tipped employees were required to make tea, roll silverware, make coffee, take out the trash, set up the buffet, set utensils and utensil holders, and complete other duties.

61.     At the end of their shift, tipped employees were required to mop, sweep, take out the trash, and complete other closing duties that regularly took up to an hour to complete.

62.     Tipped employees were either paid $2.13 per hour for their side work, or not paid

at all.

63.    Defendants required tipped employees to purchase company t-shirts to wear as uniforms. Tipped employees paid $20 for three t-shirts.

64.    Defendants required tipped employees to pay for customer walkouts.

## PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

65.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Ona Carotenuto**

66.    Ona Carotenuto worked as a server at the King Crab in Myrtle Beach, South Carolina from approximately March through June 2017.

67.    Ms. Carotenuto typically worked between 50-70 hours per week for Defendants.

68.    Ms. Carotenuto's shift typically started at noon or 1pm, and typically ended around 11pm.

69.    Ms. Carotenuto typically worked 4-6 shifts per week.

70.    As a server, Ms. Carotenuto's primary job duty was waiting on guests.

71.    Ms. Carotenuto was paid $2.13 per hour for all hours for which she received compensation.

72.    Ms. Carotenuto was never informed of the tip credit provisions of the FLSA by Defendants. When she was hired, she was not told anything about how she would be paid or the requirements for taking a tip credit by Defendants. She was not told what her hourly wage would be.

73.     At the end of each shift, Ms. Carotenuto was required to give 2% of her total sales, plus taxes, to the restaurant itself.

74.     Ms. Carotenuto's tip outs were retained by Defendants.

75.     Ms. Carotenuto never actually received any wage payments from Defendants—all of her paychecks were zeroed out to pay for taxes.

76.     Ms. Carotenuto's paystubs did not reflect all of the hours she worked for Defendants.

77.     Upon information and belief, Defendants reduced the number of hours Ms. Carotenuto received compensation for by requiring her to work off the clock, by reference to the work schedule not the actual hours she worked, and by simply deducting hours from her records before calculating payroll.

78.     Ms. Carotenuto was regularly required to complete non-tipped side work at the beginning and end of her shifts.

79.     At the beginning of her shift, Ms. Carotenuto spent approximately 1 hour making tea, rolling silverware, making coffee, setting up the buffet, and setting up utensils.

80.     At the end of her shift, Ms. Carotenuto spent approximately 1 hour sweeping, mopping, and cleaning up the restaurant.

81.     Ms. Carotenuto was required to pay Defendants $20 for 3 uniform shirts.

82.     Ms. Carotenuto was required to pay for customer walkouts at full buffet price, $32.00.

**William Struck**

83.     William Struck worked as a server at the King Crab in Myrtle Beach, South Carolina from approximately January through July 2017.

84.     Mr. Struck typically worked between 40-70 hours per week for Defendants.

85.     Mr. Struck's shift typically started at 1pm, an hour before the restaurant opened, and typically ended around 10 or 11pm.

86.     Mr. Struck typically worked 4-6 shifts per week.

87.     As a server, Mr. Struck's primary job duty was waiting on guests.

88.     Mr. Struck was paid $2.13 per hour for all hours for which he received compensation.

89.     Mr. Struck was never informed of the tip credit provisions of the FLSA by Defendants.

90.     At the end of each shift, Mr. Struck was required to give 2% of his total sales, including taxes, to the restaurant itself.

91.     Mr. Struck usually handed this tip-out to the owner, Vic, or his father, who they called Papa.

92.     Mr. Struck's tip outs were retained by Defendants.

93.     Mr. Struck never actually received any wage payments from Defendants—all of his paychecks were zeroed out to pay for taxes.

94.     Mr. Struck's paystubs did not reflect all of the hours he worked for Defendants.

95.     Upon information and belief, Defendants reduced the number of hours Ms. Carotenuto received compensation for by requiring her to work off the clock, by reference to the

work schedule not the actual hours she worked, and by simply deducting hours from her records before calculating payroll.

96. Mr. Struck was regularly required to complete non-tipped side work at the beginning and end of his shifts.

97. At the beginning of his shift, Mr. Struck spent approximately 1 hour making tea, rolling silverware, making coffee, setting up the buffet, setting up utensils, cleaning, and completing other tasks to get the restaurant ready for business.

98. At the end of her shift, Mr. Struck spent approximately 1 hour sweeping, mopping, and cleaning up the restaurant.

99. Mr. Struck was required to pay Defendants $20 for 3 uniform shirts.

### IV.    Collective Action Allegations

100. Plaintiffs brings the First and Second Counts on behalf of themselves and all similarly situated current and former servers and other employees paid minimum wage minus a tip credit at the King Crab owned, operated, and controlled by Defendants in Myrtle Beach, South Carolina, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

101. At all relevant times, Plaintiffs and the other King Crab tipped employees have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the other King Crab tipped employees minimum wage for all hours worked, failing to properly inform tipped employees of the tip credit requirements of the FLSA, requiring tipped employees to make tip-out payments to

the restaurant itself, requiring tipped employees to complete non-tipped side work, and taking "kickbacks" from tipped employees' wages. Plaintiffs' claims are essentially the same as those of the other King Crab tipped employees.

102.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiffs and the other King Crab tipped employees.

103.    Defendants are aware or should have been aware that federal law requires them to inform any employee from whose wages they intend to take a tip credit of the tip credit provisions of the FLSA.

104.    Defendants are aware or should have been aware that federal law prohibits them from paying employees tip credit minimum wage unless they adhere to certain rules, including rules against misappropriating employee tips.

105.    Defendants are aware or should have been aware that federal law requires them to pay employees minimum wage for all hours worked.

106.    Defendants are aware or should have been aware that federal law requires them to pay employees overtime wages for all hours worked in excess of 40 hours in a given workweek.

107.    Defendants are aware or should have been aware that they are not permitted to pay employees minimum wage minus a tip credit if they work in dual jobs, *i.e.*, one job that involves receiving tips, and another that does not.

108.    Defendants are aware or should have been aware that federal law prohibits them from taking deductions from employees' wages for certain uniforms, customer walkouts, other expenses.

109.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

110.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

111.    King Crab's tipped employees are readily identifiable and ascertainable.

112.    For the purpose of notice and other purposes related to this action, the other King Crab tipped employees' names and contact information are readily available from Defendants' records.

113.    In recognition of the services Plaintiffs have rendered and will continue to render to the King Crab tipped employees, Plaintiffs will request payment of a service award upon resolution of this action.

## V.    South Carolina Class Action Allegations

114.    Plaintiffs brings the Third Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or worked as servers and/or have been paid minimum wage minus a tip credit at the King Crab in Myrtle Beach, South Carolina between December 22, 2017 and the date of final judgment in this matter (the "South Carolina Class").

115.    Excluded from the South Carolina Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the South Carolina Class.

116.    The number and identity of the South Carolina Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay, tips received, and deductions made from the pay of each South Carolina Class Member may also be determinable from Defendants' records.  For the purpose of notice and other purposes related to this action, their names and contact information are available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

117.    The South Carolina Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

118.    There are more than 50 South Carolina Class members.

119.    Plaintiffs' claims are typical of those claims which could be alleged by any South Carolina Class member, and the relief sought is typical of the relief which would be sought by each South Carolina Class member in separate actions.

120.    Plaintiffs and the South Carolina Class members were subject to the same corporate practices of Defendants, as alleged herein, of having their tips unlawfully deducted by Defendants.

121.    Plaintiffs and the South Carolina Class members have all sustained similar types of damages as a result of Defendants' failure to comply with S.C. Code Ann. § 41-10-10, *et seq.*

122.    Plaintiffs and the South Carolina Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all South Carolina Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the South Carolina Class members.

14

123.    Plaintiffs and the South Carolina Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

124.    By seeking to represent the interests of the South Carolina Class members, Plaintiffs are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

125.    Plaintiffs are able to fairly and adequately protect the interests of the South Carolina Class and have no interests antagonistic to the South Carolina Class.

126.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

127.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

128.    The issues in this action can be decided by means of common, class-wide proof.

129.    Upon information and belief, Defendants and other employers throughout the state violate S.C. Code Ann. § 41-10-10, *et seq*.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a

degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

130.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

131.    Common questions of law and fact exist as to the South Carolina Class that predominate over any questions only affecting the South Carolina Class Representatives and the South Carolina Class members individually and include, but are not limited to:

  a.  Whether Defendants took deductions from the wages and/or tips of Plaintiffs and the South Carolina Class;

  b.  Whether Defendants' policy of taking deductions from the wages and/or tips of Plaintiffs and the South Carolina Class was instituted willfully or with reckless disregard of the law; and

  c.  The nature and extent of class-wide injury and the measure of damages for those injuries.

132.    In recognition of the services Plaintiffs has rendered and will continue to render to the South Carolina Class, Plaintiffs will request payment of a service award upon resolution of this action.

## VI.    Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and all other King Crab tipped employees)

133.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

134.    Plaintiffs and other King Crab tipped employees are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

135.    Defendants attempted to take the maximum allowable "tip credit" from the wages of Plaintiffs and other King Crab tipped employees. 29 U.S.C. § 203(m).

136.    Plaintiffs and other King Crab tipped employees were not properly informed of the tip provisions of the FLSA.

137.    Plaintiffs and other King Crab tipped employees were denied proper minimum wage because they were required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants themselves.

138.    Plaintiffs and other King Crab tipped employees were denied proper minimum wage because they were required to pay for uniforms and other expenses for the benefit of Defendants.

139.    Plaintiffs and other King Crab tipped employees were denied proper minimum wage because they were required to work off the clock.

140.    Plaintiffs and other King Crab tipped employees were denied proper minimum wage because they were required to spend more than 20% of their time at work engaged in non-tipped side work.

141.    As a result of Defendants' policies and practices, they were not permitted to take a tip credit from the wages of Plaintiffs and other King Crab tipped employees.

142.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and other King Crab tipped employees.

143.    Plaintiffs and other King Crab tipped employees have been damaged by Defendants' willful failure to pay minimum wage as required by law.

144.    As a result of Defendants' willful violations, Plaintiffs and other King Crab tipped employees are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and all other King Crab tipped employees)

145.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

146.    Plaintiffs and other King Crab tipped employees worked more than forty hours in one or more workweeks.

147.    Plaintiffs and other King Crab tipped employees were required to work off the clock.

148.    Plaintiffs and other King Crab tipped employees had work hours removed from their time records before Defendants processed payroll.

149.    As a result, Plaintiffs and other King Crab tipped employees were not properly compensated for hours worked in excess of 40 hour per week.

150.    By not paying Plaintiffs and other King Crab tipped employees proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

151.     As a result of Defendants' willful violations, Plaintiffs and other King Crab tipped employees are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Unlawful Deductions from Wages – South Carolina Payment of Wages Act**
**(On Behalf of Plaintiffs and the South Carolina Class)**

152.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

153.     Defendants are an "employer" of Plaintiffs and the South Carolina Class as defined by the SCPWA.

154.     Defendants employed Plaintiffs and the South Carolina Class within the state of South Carolina.

155.     Money received by Plaintiffs and the South Carolina Class directly as tips or from the tip pool and as deductions for expenses were "wages" as defined by SCPWA, § 41-10-10(2).

156.     Defendants illegally deducted amounts from the wages of Plaintiffs and the South Carolina Class without providing proper notice as required by S.C. Code Ann. § 41-10-30(A).

157.     Specifically, Defendants required Plaintiffs and the South Carolina Class to pay approximately 2% of their tips directly to Defendants.

158.     Defendants' unlawful deduction policy was instituted willfully.

159.     By making deductions from the tip income of Plaintiffs and the South Carolina Class, Defendants have violated the SCPWA.

160.     As a result of Defendants' violations of the SCPWA, Plaintiffs and the South Carolina Class are entitled to the unlawfully deducted tips, treble damages, attorneys' fees, costs, and injunctive relief.

**WHEREFORE**, Plaintiffs Ona Carotenuto and William Struck pray for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members;

B.     Unpaid minimum wages, overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

D.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to the South Carolina Class;

E.     Designation of Plaintiffs as representative of the South Carolina Class and counsel of record as Class Counsel;

F.     A declaratory judgment that the practices complained of herein are unlawful under the SCPWA;

G.     An award of unlawfully deducted tips due under the SCPWA;

H.     An award of treble damages under the SCPWA;

I.      An award of prejudgment and post-judgment interest;

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees; and

K.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Patrick McLaughlin
Patrick McLaughlin
WUKELA LAW FIRM
403 Second Loop Rd.
PO Box 13057
Florence, SC 29504-3057
843-669-5634 (Phone)
843-669-5150 (Fax)
(Patrick@wukelalaw.com)

Andrew Biller (*pro hac vice application forthcoming*)
Trial Counsel
Andrew Kimble (*pro hac vice application forthcoming*)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
513-651-3700 (Phone)
513-665-0219 (Fax)
(abiller@msdlegal.com)
(akimble@msdlegal.com)

*Counsel for Plaintiffs*

## Jury Demand

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.


/s/ Patrick McLaughlin